UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MATTHEW MOORE,

            Plaintiff,            Case No. 1:13-cv-669

v.                                      Honorable Paul L. Maloney

UNKNOWN PART(Y)(IES) et al.,

            Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Gaskill, Estes, Preace, Behler, McKee, Steven, Cornly, Rosa, Jones and Macauley. The Court will serve Plaintiff's Eighth Amendment failure to protect claims against Defendants Peiffer, Nevins, Walters, Mote, Bennickson and Kelsey.

**Discussion**

I.        Factual allegations

Plaintiff is incarcerated in the Oaks Correctional Facility (ECF), but the events giving rise to his complaint occurred at the Ionia Bellamy Creek Correctional Facility (IBC). In his *pro se* second amended complaint (docket #12), Plaintiff sues the following IBC employees: Warden Ken McKee; Deputy Warden (Unknown) Macauley; Resident Unit Manager (Unknown) Mote; Assistant Resident Unit Managers Laura Nevins and G. Walters; Sergeant (Unknown) Bennickson[1]; Librarians Norman Preace and Anna Estes; Officers (Unknown) Gaskill, (Unknown) Peiffer and (Unknown) Kelsey; Dr. Dennis Behler; Nurses Kelly Steven, D. Cornly and Karen Rosa; and Southern Region Health Care Administrative Assistant Alfred Jones.[2]

Plaintiff's thirty-page second amended complaint is difficult to follow as it is composed of several separate documents that contain overlapping claims with few dates or specific allegations. Plaintiff claims that he has been in special housing protection for almost three years and that his cell was in direct view of the "bubble." On June 10, 2013, Prisoner Beamon entered Plaintiff's cell while the door was open and began beating him. The cell door closed during the assault, so Plaintiff was unable to escape from Beamon. Plaintiff claims that he tried to cover his head during the assault because he already suffered from severe headaches. Staff eventually opened the cell door and Beamon walked out. Plaintiff alleges that he suffered injuries to his head and ribs

---

[1]Sergeant Bennickson also is named in the second amended complaint as Sergeant "Bennecks." (*See* Second Am. Compl., docket #12, PageID#148).

[2]Included as Defendants in this action are all of the individuals listed as Defendants in the caption of the second amended complaint and all of the individuals listed as Defendants in Section II(B) of the second amended complaint. The Court has not considered allegations contained in the body of the second amended complaint against individuals who were not named as Defendants in at least one of those locations. Those individuals include Assistant Warden (Unknown) Trieweller, Matthew Mitchell, K.T. Lowe, ARUS (Unknown) Mitchell and RUM (Unknown) Thomas.

from the assault. Plaintiff claims that other prisoners alerted Defendant Peiffer regarding the assault, but he failed to respond until after Beamon had left Plaintiff's cell. Peiffer issued a major misconduct against Plaintiff for fighting as a result of the incident. (*See* Misconduct Report, docket #1-1, Page ID#6.) However, following a hearing on June 17, 2013, Plaintiff was found not guilty of the offense. (*See* Class I Misconduct Hearing Report, docket #7-1, Page ID#62.) The hearing officer found that Beamon was the aggressor and that Plaintiff had the right to defend himself while he was trapped in the cell with Beamon. (*Id.*)

Plaintiff claims that despite his injuries from the assault, he had to carry an oversized bag behind his back while his hands were cuffed when he was moved to a different unit on June 14. Plaintiff also was given a top bed assignment. Plaintiff further contends that Defendants Behler, Steven, Cornly, Rosa and Jones acted with deliberate indifference to his serious medical needs. Between June 10 and 14, Plaintiff sent two kites to health care regarding his injuries from the assault. A nurse came to Plaintiff's cell after the first kite, but did not enter the cell to examine Plaintiff. In response to the second kite, Plaintiff was instructed to kite again if his condition worsened. Plaintiff was not seen by a doctor for over a month. Plaintiff already was taking naproxen and aspirin for headaches that pre-existed the assault by Prisoner Beamon. According to Plaintiff, Defendant Behler refused to put Plaintiff back on sulfamethoxazole and told him that aspirin containing caffeine was the best treatment. Plaintiff claims that his head still hurts and that he should be referred to an outside doctor for treatment.

Plaintiff previously was housed in a single-man cell at IBC, but was moved to a double-man cell with Prisoner Derrick Fountain. Plaintiff had shared a cell with Fountain in the past, but was moved due to "bad blood" between them. (Second Am. Compl., docket #12, Page

ID#151.) Plaintiff further claims that Defendants knew that Fountain had a high assaultive risk and should not have been placed him in a cell with another prisoner. Plaintiff informed Defendant Sergeant Bennickson about his trouble with Fountain, but Bennickson responded (verbatim), "work it out, your grown men." (Second Amend. Compl., Page ID#151.) Plaintiff repeatedly asked Defendants Bennickson, Mote, Nevins and Walters to move him to another cell due to his fear of Defendant Fountain, but his requests were denied. Sometime later, Fountain assaulted Plaintiff, causing a blood clot in Plaintiff's right eye. Plaintiff informed Defendant Officer Kelsey about the assault, but when Fountain denied attacking Plaintiff, Kelsey left without taking any further action.

Plaintiff alleges a vast conspiracy by Defendants to retaliate against him for filing grievances and lawsuits by engaging in a variety of adverse actions, including placing him in cells with assaultive prisoners and transferring him from IBC to ECF. (Second Am. Compl., Page ID##151, 154-55, 168.) For example, Plaintiff claims that Defendants Nevins, Walters, Mote, Macauley, McKee and Bennickson "were all aware of Fountain's actions and left me at his cruel unmercy under an very oppressive decree of us pretending to be friends and me not filing any more grievances at all." (Second Am. Compl., Page ID#153.) Plaintiff further claims (verbatim), "After filing of lawsuit ARUS Nevins and RUM Mote went on by refusing me hygiene, and refusing to process my legal mail daily. . . . and they've been in this 'campaign of harassment' ever since by retaliating and having me sent to Oaks prison to punish me. Deputy Warden Macauley and Warden McKee went right along with the transfer." (Second Am. Compl., Page ID#168.)

Plaintiff also claims that Defendants Librarians Preace and Estes denied his requests for access to legal forms and copies of legal materials because Plaintiff is indigent. On one occasion when Plaintiff had an appeal deadline in family court, he asked Defendant Preace for copies of legal

materials that Plaintiff needed to study for purposes of his appeal. According to Plaintiff, Preace told him that, "[u]nless I become un-poor I Moore do NOT have the same EQUAL RIGHTS regardless if MDOC IBC will or will NOT assist me with Family Law matters again." (Second Am. Compl., Page ID#159.) Plaintiff alleges that Defendant Officer Gaskill, who supervises the library when the librarians are absent, refused to provide Plaintiff access to law books even when there was another guard on duty. Plaintiff further contends that in April 2013, Defendant Estes told him that Defendants Macauley and Preace told her to stop making legal copies for him.

Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.  **Eighth Amendment**

1.  *Failure to protect*

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*,

452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). In order to establish liability under the Eighth Amendment for a prison official's failure to protect her, an inmate must demonstrate that the official was deliberately indifferent "to a substantial risk of serious harm" to the inmate. *Farmer*, 511 U.S. at 828. To demonstrate deliberate indifference, an inmate must present evidence from which a trier of fact could conclude "that the official was subjectively aware of the risk" and "disregard [ed] that risk by failing to take reasonable measures to abate it." *Id.* at 829, 847; *see also Green v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

Plaintiff claims that Defendant Peiffer failed to protect him from assault by Prisoner Beamon. He further alleges that Defendants Nevins, Walters, Mote, Bennickson and Kelsey failed to protect him from assault by Prisoner Fountain. At this stage of the proceedings, the allegations set forth in the second amended complaint are sufficient to state an Eighth Amendment claim against those Defendants.

While Plaintiff also asserts that Defendants McKee and Macauley failed to protect him from assault by Prisoner Fountain, he does not make any specific factual allegations against them, other than his claim that they denied his grievances and failed to take corrective action in

-7-

response to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Macauley and McKee engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

2.    *Medical care*

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the

plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff claims that Defendants Behler, Steven, Cornly, Rosa and Jones denied him proper medical treatment for the injuries sustained in the assault by Defendant Beamon, but he fails to make specific factual allegations against the individual Defendants. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's

claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991).

Assuming Defendants Steven, Cornly and Rosa were the nurses responsible for responding to the medical kites Plaintiff sent regarding the injuries he sustained in the assault by Prisoner Beamon, Plaintiff cannot show that they were deliberately indifferent to his serious medical needs. According to Plaintiff, a nurse came to his cell after the first kite. While the nurse did not enter the cell, he or she spoke to Plaintiff and observed him in his cell. In response to the second kite, Plaintiff was instructed to kite again if his condition worsened. Plaintiff does not allege that his condition worsened or that he kited heath care again regarding his injuries. Plaintiff, therefore, cannot show that Defendants disregarded a substantial risk of serious harm. Accordingly, Plaintiff fails to state a claim against the Defendant medical staff for failing to treat his alleged injuries.

Plaintiff also alleges that Defendant Behler has failed to provide him with proper treatment for his head pain, which pre-existed the assault. Plaintiff claims that Defendant Behler refused to put him back on sulfamethoxazole[3] and told Plaintiff that aspirin containing caffeine was

---

[3] According to MedicineNet.com, "[s]ulfamethoxazole is an anti-bacterial sulfonamide. It prevents the formation of dihydrofolic acid, a compound that bacteria must be able to make in order to survive . . . . Sulfamethoxazole is now used primarily in combination with trimethoprim, a combination product known as Bactrim or Septra."

the best treatment for his head pain. Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

Moreover, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, __ F.3d __, No. 13-1673, 2014 WL 1378190, at *8 (6th Cir. Apr. 9, 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*,

196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, __F. App'x__, No. 13-5315, 2014 WL 1344478, at *2 (6th Cir. Apr. 4, 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). Dr. Behler was providing ongoing treatment for Plaintiff's head pain and recommended aspirin containing caffeine. Because Plaintiff alleges nothing more than a disagreement with Dr. Behler over the course of treatment, he fails to state an Eighth Amendment claim.

                3.     *Other*

Plaintiff claims that despite having head and rib injuries from the assault by Prisoner Beamon, he had to carry an oversized bag behind his back while his hands were cuffed when he was moved to a different unit. Plaintiff further alleges that he was given a top bed assignment.

The deprivations of which Plaintiff complains constitute isolated or temporary periods of unpleasantness or discomfort that do not amount to serious deprivations under the Eighth Amendment. Allegations about temporary inconveniences or discomforts, *e.g.*, being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also Adams v. Pate*, 445 F.2d 105, 108–109 (7th Cir. 1971) (holding that conditions that create "temporary inconveniences and discomforts" or that make "confinement in such quarters unpleasant" are insufficient to state an Eighth Amendment claim). Plaintiff, therefore, fails to state a claim.

Plaintiff also claims that various Defendants have subjected him to verbal harassment. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d at 954-55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."). Accordingly, Plaintiff fails to state an Eighth Amendment claim arising from the alleged verbal abuse.

C. **Access to Legal Materials**

Plaintiff contends that Defendants Preace, Estes and Gaskill have denied him access to legal forms and photocopies in violation of his First Amendment right of access to the courts and his Fourteenth Amendment right to equal protection.

1. *Access to the courts*

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or

alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992). An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff does not make any specific factual allegations whatsoever that the lack of legal materials or copies has hindered his efforts to pursue a nonfrivolous legal claim, except for his claim that Defendant Preace denied him a copy of "the section" Plaintiff needed for an appeal in a family court matter. (*See* Second Am. Compl., Page ID#159.) Plaintiff, however, does not specifically allege what legal material he was denied or how the appeal was hindered by the alleged

denial of the legal copies. According to the Michigan Court of Appeals decision provided by Plaintiff, the case concerned the termination of a mother's parental rights to three minor children by the Wayne County Circuit Court Family Division. While it appears that Plaintiff was the biological father of one of the minor children, his parental rights were not the subject of the proceedings. Consequently, Plaintiff cannot show actual injury to his pursuit of a nonfrivolous legal claim. *See Christopher*, 536 U.S. at 415.

2.   *Equal Protection*

Plaintiff also contends that Defendant Preace violated the Equal Protection Clause by denying him copies of legal forms and other legal materials because he is indigent. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not allege that he is a member of a protected class and neither his status as a prisoner nor an indigent makes him a member of a suspect class. *See Harris v. McRae,* 448 U.S. 297, 323 (1980) (indigence is not a suspect class for an equal protection claim); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (1997) (indigent prisoners are not a suspect class); *see also Murray v. Dosal,* 150 F.3d 814, 818 (8th Cir. 1998) ("Neither prisoners nor indigents constitute protected classes."). In addition, Plaintiff's claim does not concern a fundamental right. A fundamental right is one that is explicitly or implicitly guaranteed by the Constitution. *San Antonio Independent Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33 (1973). Although the right to access the courts under the First Amendment is a fundamental right, it does not mandate prisons to provide unlimited access to photocopies in whatever amount a


prisoner requests. *See Bell Bey v. Toombs*, No. 93-2405, 1994 WL 105900, at *2 (6th Cir. Mar. 28, 1994).

Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). The plaintiffs bear the burden of demonstrating that the government lacks a rational basis, and they may satisfy this burden either by negating "'every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will.'" *Id.* (quoting *Warren,* 411 F.3d at 711). The State, conversely, bears no burden of proof; its legislative choice is presumptively valid and "'may be based on rational speculation unsupported by evidence or empirical data.'" *Id.* (quoting *Trihealth, Inc. v. Bd. of Comm'rs,* 430 F.3d 783, 790 (6th Cir. 2005)).

Under Michigan Department of Corrections (MDOC) Policy Directive 05.03.116 ("Prisoners' Access to the Courts"), loans are provided to indigent prisoners to make legal copies in limited circumstances. The policy states:

> Prisoners who lack sufficient funds to pay for copies of documents in their possession, or available to them in the law library, which are necessary for the prisoner to file with the court or serve on a party to a lawsuit shall be loaned funds to pay for the copying. Funds shall not be loaned, however, for copying a document which can otherwise be reproduced by the prisoner, except if the document is notarized or was created for the prisoner through the Legal Writer Program and as otherwise required by court order for service of a federal lawsuit.

Essentially, the policy limits indigent loans to circumstances where the copies are necessary to protect a prisoner's right of access to the courts. The prison's decision to limit the copying expenses it will incur to support Plaintiff's litigation activities is rationally related to the legitimate state interest of managing prison expenses, and rationing limited staff resources. *See Bloodworth v. Smith*, No. 3:11-cv-968, 2011 WL 229114, at *2 (N.D. Ohio June 8, 2011). Plaintiff, therefore, fails to state an equal protection claim. To the extent Plaintiff claims that Defendant Preace violated the indigent loan policy, a violation of prison policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff presents a claim under state law against Defendant Preace, this Court declines to exercise jurisdiction over the state law claim. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

D.  **Retaliation**

Plaintiff alleges a vast conspiracy by Defendants to retaliate against him for filing grievances and lawsuits by engaging in a variety of adverse actions, including placing him in cells with assaultive prisoners and transferring him from IBC to ECF. (Second Am. Compl., Page ID##151, 154-55, 168.) For example, Plaintiff claims that Defendants Nevins, Walters, Mote, Macauley, McKee and Bennickson "were all aware of Fountain's actions and left me at his cruel unmercy under an very oppressive decree of us pretending to be friends and me not filing any more grievances at all." (Second Amend. Compl., Page ID#153.) Plaintiff further claims (verbatim), "After filing of lawsuit ARUS Nevins and RUM Mote went on by refusing me hygiene, and refusing to process my legal mail daily. . . . and they've been in this 'campaign of harassment' ever since by retaliating and having me sent to Oaks prison to punish me. Deputy Warden Macauley and Warden McKee went right along with the transfer." (Second Amend. Compl., Page ID#168.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

For purposes of this opinion, the Court will assume that Plaintiff has satisfied the first two requirements for a retaliation claim. With regard to the causation requirement, Plaintiff makes only conclusory allegations that the alleged adverse actions were motivated by his grievances and lawsuits. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). Plaintiff has not presented any facts whatsoever to support his allegations of a broad retaliatory conspiracy to retaliate against him for filing grievances and lawsuits. Accordingly, he fails to state a claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Gaskill, Estes, Preace, Behler, McKee, Steven, Cornly, Rosa, Jones and Macauley will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and

1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve Plaintiff's Eighth Amendment failure to protect claims against Defendants Peiffer, Nevins, Walters, Mote, Bennickson and Kelsey.

An Order consistent with this Opinion will be entered.


Dated: May 21, 2014                    /s/ Paul L. Maloney
                                       Paul L. Maloney
                                       Chief United States District Judge